Case number 23-5017, National Security Archive Appellant v. Central Intelligence Agency. Ms. Jacobs for the appellant. Mr. Yellen, DOJ, for the appellee. Morning. Good morning, Your Honors. May it please the Court. My name is Hilary Jacobs, and I represent Appellant, the National Security Archive, which, for convenience, I will refer to as the Archive as I proceed. I would like to reserve two minutes for rebuttal. The Court requested that the parties be prepared to address whether appellant has standing after the 2021 Supreme Court decision TransUnion LLC v. Ramirez, and I'd like to start with that. The Archive has suffered a concrete injury through the CIA's withholding of transcribed text of the Perutz memo. As stated in our complaint, the Archive is an independent, non-governmental research institute and library with a mission promoting research and publication about U.S. governmental and national security decision-making processes. The Archive conducts investigative journalism and collects, analyzes, publishes, and serves as a repository for documents acquired through FOIA in order to promote openness and accountability. Being denied access to a document of historical significance in its original form thwarts the Archive's mission. What is the downstream consequence of not getting the document in its original form? Well, historians prefer to review source material rather than transcripts, which can sometimes have errors and don't always show the complete picture. Original documents often contain information of great historical value that the transcriptions don't necessarily capture, such as lists of offices, and so by not getting that information, my client has been harmed, and the public who have interest in these historical issues. So, Ms. Jacobs, after TransUnion, what do you think the test is for informational injuries? Do you read the Supreme Court in TransUnion as suggesting that there must be a downstream consequence for an informational injury? I read the TransUnion decision as actually carving out a separate category for informational injuries where the information is owed to the plaintiff under statute. That said, I do think that, of course, concrete injury is carved out from what? Carved out from the circumstances that were at issue in TransUnion. Okay. That said, as I have articulated, my client has suffered a concrete injury, and I do understand that courts have an independent obligation to always determine whether or not Article 3 standing exists and whether there is a concrete injury, and so my client does have a concrete injury, and I think that is relevant here. The standard, while not articulated in TransUnion because it did not deal with an information request, would be whether or not the party seeking information has been injured by the absence of information and the improper denial or withholding of that information. FOIA was designed to afford the public a right to information on how the government operates, but to the extent a party has a particular interest in information that it requested, I would assert that it has a concrete injury. Did you plead this informational injury? This was raised in a per curiam order. This did not come up in the record before this. You just said that it was not that FOIA is carved out, but only where you have informational injury in relation to what your purpose is. Is that correct? Yes. Well, I mean, I do think the suffered a concrete injury from parties in cases that did not receive information they were entitled to under public disclosure laws, and this also consists with cases that the Supreme Court relied on in deciding TransUnion. This also consists with Maloney v. Carnahan, which was authored by, I'm sorry, the dissent in Maloney v. Carnahan, which was authored by, Your Honors, Rao and Ginsberg, which recognized that the Supreme Court and this court have held that parties under FOIA can constitute a private particularized and concrete injury that gives rise to standing. What is your need for the original document versus the transcribed version? My client sees a great value in viewing original documents, source materials in their original form. As I stated previously, transcriptions can often have errors and they don't always show the complete picture. The cover letter that the CIA produced as a part of its FOIA response, which was not included in the transcription, is a perfect type of the exact type of information that would get lost in a transcription. And what's your evidence that someone from the CIA or its components actually participated in this process of the publication? Yeah, thank you for asking that. So the statute 22 U.S.C. 4351 is a statute that requires the Department of State to publish the series, The Foreign Relations of the United States. That statute requires that agencies that may have records relevant to the foreign relations of the United States cooperate and provide access to those records and participate in the declassification process in publishing those records. So it's clear that the CIA was involved in some way in this process. The acknowledgment section of the publication itself actually thanked the CIA for its involvement and its assistance in providing access to the documents that are included in the publication. And nowhere has the CIA denied that it was involved. They had to be involved. It was statutorily required for them to be involved. Otherwise, this would not have been published. So going back to your question regarding official acknowledgement, as this court has held in First Amendment versus CIA, where a plaintiff has identified information in the public domain that, one, matches information requested, two, is as specific as the information requested, and three, has been made public through an official and documented disclosure, agencies have waived their right to claim a FOIA exemption to that information. We just discussed how the CIA's dedicated Foreign Relations of the United States declassification act, acting on behalf of the entire agency, approved declassification of the transcription that's included in the Department of State publication. This constitutes an official and documented disclosure by the CIA. You have ex parte communications with the judge. In other words, he looked at these documents and made very specific findings about what he actually saw in the case. So how are you challenging that? Yes, Your Honor, we are obviously at a disadvantage not having seen those classified submissions. However, what truly happened behind the scenes doesn't actually matter because precedent dictates the outcome regardless. Precedent holds that a component or subcomponent acting on behalf of an agency binds the agency, and that's exactly what happened here. The CIA's dedicated Foreign Relations of the United States... Are you pointing to a particular person, or are you saying CIA generally? The CIA has staff. It has historical program staff and history staff in the Center for Study for Intelligence. It has a program. There's not a lot of public information on it, not surprisingly, but they do have dedicated staff for the purposes of publishing the statutorily required volume. But for official acknowledgement, there has to be, you know, the information has to have been made public through an official and documented disclosure by the agency from which you are seeking the information. So what evidence is there that the CIA made an official and documented disclosure? There's plenty of evidence, Your Honor. So first of all, as I stated, the acknowledgement section of the publication thanks the CIA for granting it access to the documents. But that isn't still an action of the State Department. Well, we would argue that the CIA's involvement in the declassification process and approving that the declassification... I'm sorry, that the transcript could be published, that constitutes in and of itself official acknowledgement. But that's still the State Department suggesting, you know, thanking the CIA. It's not the CIA affirmatively acknowledging and disclosing a document. I mean, it seems to me that there is some real difference between those two things. Your Honor, I think that if we're assuming that the CIA followed the law, which the statute requires, then they would have had to be involved in this themselves. And they are statutorily required to be involved in providing access and declassifying the documents. So I do not actually think that there's a distinction. I think both of the to cooperate in publishing the foreign relations of the United States volume. The CIA has independent obligations under the statute to do so. And I think all the circumstances surrounding the document indicate that it did. And the CIA has not contested this. In fact, there are brief states that they released, quote, a cover letter to the Perutz... I'm sorry, that was with respect to the FOIA request. But they have nowhere denied that they were involved in some way. And that involvement constitutes official acknowledgement. And based on night and based on other cases that indicate that even if that disclosure was somehow made an error, CIA cannot revoke it. Turning now to... Well, I'm at time, actually. So I will be happy to answer more questions. Thank you. Good morning, Your Honors. May it please the Court. I'm Louis Yellen from the Department of Justice. I'm here today on behalf of... Your Honors, I'll begin with the standing question. For reasons I'll explain in a moment, Aiken's public citizen are directly controlling precedent concerning standing in this case. And the establishment of the archive does, in fact, have standing to assert its claim, to bring its claim. As recently as last term, the Supreme Court and Mallory admonished the courts again, the lower courts, excuse me, again, that if there's directly controlling precedent, it's the lower court's obligation to apply that precedent, even if courts think that there may be tension with other Supreme Court decisions. Now, Aiken and public citizens stand for the proposition that a plaintiff suffers an injury when the plaintiff fails to obtain specific information that the plaintiff requested under a statute requiring public disclosure of that information. TransUnion did not disturb that central holding of Aiken and public citizen. TransUnion did not exclusively overrule those decisions. It did, in fact, distinguish the case before it, relying on those decisions. And there are other reasons for understanding TransUnion as not having overruled Aiken's and public citizen. For example, TransUnion was a damages action. It wasn't an action seeking an injunction to require the disclosure of information that allegedly was improperly withheld, notwithstanding statutory obligation to release the information. Under these circumstances, it would be inappropriate, the government's view, to assume that TransUnion implicitly overruled this prior precedent that was directly on point. So, Mr. Yellen, even if TransUnion didn't overrule those cases, did it perhaps add a loss? Because in public citizen, the court says cases interpreting FOIA have never suggested that those seeking information need show more than that the information they sought were denied, but that they were denied specific agency records. But then in TransUnion, the court says an asserted informational injury that causes no adverse effects cannot satisfy Article III. So must someone after TransUnion now show some adverse effect or some downstream consequence? Well, again, Your Honor, we don't think that's enough to assume that there's an overruling of the prior decision. Spokio describes Aiken's and public citizen as holding in a case where a plaintiff requested a specific record. Now, I'm quoting from Spokio. A plaintiff in such a case need not allege any additional harm beyond the one Congress has identified. That's 2016. If we thought, if we were to have a basis for thinking that TransUnion was eliminating that understanding of its prior precedent, it would be wholly surprising for TransUnion to do so by implication. That would be a major change in the understanding of the prior precedent. So you think that requiring a downstream consequence would in effect be over, would be directly in contravention of public citizen and Aiken's? Yes, Your Honor. Yes, Your Honor. If the court has no further questions, I'm happy to answer any questions on the merits the court has. Otherwise, we would ask for affirmance for the reasons provided in our brief and in our classified supplement. I did have one question. On the public domain, the archive here has suggested that when it's something in the public domain, that is an additional, something different from the official acknowledgement line of cases. And so I'm wondering how those two things fit together in the government's view. So we don't read this court's precedent as establishing two different doctrines, a public domain doctrine and official acknowledgement doctrine. It appears that the court has used public domain and official acknowledgement interchangeably. But even if there were any question, it is the case that there is not a single decision in a B1 or B3 FOIA case in which the court has held that the fact, the alleged fact that some document is in the public domain overrides an assertion of an exemption under B1 or B3. And that is sufficient to resolve that question. Thank you, Your Honors. Ms. Jacobs will give you two minutes on rebuttal. Thank you, Your Honor. So I actually agree with everything opposing counsel has said regarding standing. And I just would like to respond to one point about public domain. The CIA has, counsel has stated that the fact that they could not locate a case that determines that information subject to exemptions 1 or B1 or B3 have been found to need to be released under the public domain doctrine. Therefore, the doctrine does not exist. However, that is not reflected in the precedent that this court and the circuit have decided. There are at least 13 cases from the circuit demonstrating the existence of a public domain doctrine that is independent and separate from the official acknowledgement doctrine. And what I mean by that is cases where this or the information to determine whether agencies were precluded from asserting FOIA exemptions, even where the agencies did not release the information. So for a doctrine to exist, it doesn't need to be have, you know, positive findings that, you know, that it applies here and therefore the party must do this. The court considered whether or not it applied to these circumstances. And that includes cases that involve national security information that was allegedly exempt under B1 and B3, such as, let's see, such as Afshar and Students Against Genocide. And it also has dealt with a lot of, considered a lot of cases that deal with sensitive law enforcement files also subject to these exemptions. That is all. I will answer any further questions. Just on that declassification, you're suggesting that somehow this court or the district court could participate in that process, that the government, CIA disagrees with that. Declassifying the document that apparently there was something in the briefing about, you at least request that. And I just want to know what authority you would hold for that the district court or even this court could declassify a document. Well, Your Honor, under FOIA, the courts have ability to require the publication of documents and we would argue that the text. Isn't that a distinction, publication versus declassification? Well, I would argue that the text has already been declassified because it was published in the Department of State Publications. So we don't even really need to get into that conversation. Thank you. Thank you.
judges: Rao, Childs, Ginsburg